## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE DELGADO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-54 (JCH) |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, Acting | : | MARCH 13, 2018 |
| Commissioner, Social Security | : | |
| Administration, | : | |
| Defendant. | : | |

**RULING RE: MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (DOC. NO. 19) AND MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (DOC. NO. 22)**

## I.    INTRODUCTION

Plaintiff Jose Delgado brings this action under section 1383(c)(3) of title 42 of the United States Code, appealing from the final decision of the Commissioner of the Social Security Administration ("SSA"), which denied his application for Title XVI supplemental security income.  See Complaint ("Compl.") (Doc. No. 1) at 1.  Delgado seeks reversal of the Decision rendered by the Administrative Law Judge ("ALJ") Brian Curley, which affirms the Commissioner's denial.  See Motion to Reverse the Decision of the Commissioner ("Mot. to Reverse") (Doc. No. 19).  The Commissioner cross-moves for an order affirming the Decision.  See Motion to Affirm the Decision of the Commissioner ("Mot. to Affirm") (Doc. No. 22).

For the reasons set forth below, the Motion to Reverse Decision of the Commissioner is **GRANTED**.  The Motion to Affirm the Decision of the Commissioner is **DENIED**.  The case is remanded to the ALJ for proceedings consistent with this Ruling.

## II.    PROCEDURAL HISTORY

Delgado applied for supplemental security income benefits on May 7, 2013.  See Joint Statement of Facts ("Joint Facts") (Doc. No. 19-2) at 1; Certified Transcript of Record ("Tr.") (Doc. No. 11) at 11.  The Commissioner denied Delgado's application initially on August 30, 2013, and upon reconsideration on January 21, 2014.  See Tr. at 11, 84–88, 96–99.  Delgado requested a hearing with an ALJ, which was held by video conference before ALJ Curley on September 29, 2015.  See id. at 11.

On October 27, 2015, ALJ Curley issued an unfavorable Decision for Delgado, affirming the Commissioner's denial and finding that Delgado was not disabled.  See id. at 11–21.  Specifically, ALJ Curley found that, based on Delgado's residual functional capacity, he could perform past relevant work as an industrial cleaner.  See id. at 20.  Delgado requested review by the Appeals Court, and the Appeals Court denied the request on December 2, 2016.  See id. at 1–4.  Following that denial, ALJ Curley's October 27, 2015 Decision became a final decision reviewable by this court.  Delgado then filed this appeal on January 12, 2017.  See Compl.

## III.    FACTS

The court adopts the facts as stated in the Joint Statement of Facts, to which both parties have agreed.  See Joint Facts; Memorandum in Support of Motion to Affirm the Commissioner's Decision ("Mot. to Affirm Mem.") (Doc. No. 22-1) at 2.  Only those facts relevant to the issues raised in the Motions before the court are set forth below.

Delgado was born on July 27, 1957,[1] and alleges an onset of disability beginning November 18, 2011. See Joint Facts at 1; Tr. at 11. His disability application alleged impairments including asthma, anxiety, depression, blurry vision, sleep problems, nervous problems, body pain, headaches, and memory problems. See Joint Facts at 1. Delgado testified that he previously worked at a hotel for almost three years "doing laundry, taking out trash, and cleaning toilets." See id. at 19. He testified that the extreme heat from the laundry was affecting his asthma and, after a discussion with his supervisor, he was let go. See id. He has not worked since 2011. See id. at 1.

Medical records indicate that Delgado received treatment at Hartford Behavioral Health, Charter Oak Health Center, Hartford Hospital Liver Transplant Program, and Hartford Hospital Emergency Room. See id. at 2–11. He was evaluated at Hartford Behavioral Health on October 16, 2012, by Juliana Steahr, NPC, who diagnosed him with adjustment disorder with mixed anxiety and depression, alcohol dependence, and cocaine dependence. See id. at 2. He was subsequently treated by Jeannie Dilworth, APRN, Katherine Bonilla, MSW/ADC, Linda Thorpe, MSW, and Sarah Eliason, LCSW. See id. at 2–11. Bonilla changed the primary diagnosis to bipolar disorder on April 15, 2013. See id. at 3.

At Charter Oak Health Center, Delgado was treated for hyperlipidemia, hepatitis C, and asthma. See id. at 7–8. His treating physicians for these conditions included Dr. Rita Bustamante, MD, and Dr. Brimal Patel, MD. See id. at 8–10. He was also treated by Dr. Mohammed Teleb and Dr. Thomas Winters for hallux abducto valgus, or chronic

---

[1] The Joint Statement of Facts states that he was born on July 27, 2057, but the court assumes that this was a typo and that the parties intended 1957 instead of 2057. See Joint Facts at 1.

painful bunions.  See id. at 7–10.  On May 22, 2013, Dr. Mohammed diagnosed the bunions, debrided the calluses, and applied tube foam.  See id. at 7–8.  Delgado reported immediate relief.  See id. at 8.  Dr. Teleb also referred Delgado for surgical correction and prescribed antifungal treatment for the mycotic nails, but Delgado did not attend the surgical appointment.  See id.  On September 10, 2014, Delgado was seen by Dr. Thomas Winters, a podiatrist, regarding the bunions and requested a surgical consult.  See id. at 9.  He had the pre-operative examination on December 23, 2014, but he had still not had the surgery by the date of the hearing on September 19, 2015.  See id. at 9; Tr. at 38–39.

For his hepatitis C, Delgado was referred to Hartford Hospital Liver Transplant Program, where he was evaluated by Dr. Colin Swailes, MD.  See Joint Facts at 10.  Dr. Swailes indicated that Delgado had most likely spontaneously cleared the virus and would not need treatment.  See id.  Although the liver function tests excluded chronic hepatitis C, Dr. Swailes suspected celiac disease and ordered a biopsy to confirm.  See id.  The record does not indicate the results of the biopsy, nor have either of the parties presented additional information confirming whether Delgado suffers from celiac disease or not.  See Memorandum in Support of Motion to Reverse the Commissioner's Decision ("Mot. to Reverse Mem.") (Doc. No. 19-1) at 8 (stating that celiac disease "had not been worked up 'yet'").

Additionally, Delgado went to the Hartford Hospital Emergency Room on four occasions.  See Joint Facts at 10–11.  On August 11, 2012, he was seen for acute exacerbation of chronic asthma and acute bronchitis.  See id. at 10.  On October 25, 2013, he complained of rib, back, and chest pain.  See id. at 11.  On December 12,

2014, he again was seen for chest pain. See id. Finally, on April 9, 2015, he was seen for productive cough and lung pain related to his asthma, and the emergency department doctor diagnosed him with upper respiratory infection, bronchitis with acute asthma, and influenza like symptoms. See id.

A.   Medical Opinion Evidence

The record contains two opinions from providers who treated Delgado. The first opinion (the "Bonilla opinion") was completed by Katherine Bonilla, MSW/ADC, Jeannie Dilworth, APRN, and Marian Moca, MD, on May 15, 2013. See Joint Facts at 11. The report indicates that they had been treating Delgado since June 28, 2012, for bipolar disorder with slight improvement. See id. They reported that Delgado had a slight problem (rated 2 out of 5) with caring for his own physical needs, an obvious problem (rated 3 out of 5) with personal hygiene and using coping skills to meet the ordinary demands of a work environment, and a serious problem (rated 4 out of 5) with using good judgment regarding safety and dangerous circumstances and handling frustration appropriately. See id. at 12. The record appears to be missing the third page of their four-page opinion. See Tr. at 281–83. The ALJ did not give the opinion substantial weight. See id. at 18–19.

The second opinion (the "Thorpe opinion") was completed by Linda Thorpe, MSW, and Jeannie Dilworth, APRN, on October 21, 2013. See Joint Facts at 12. Thorpe and Dilworth had also been treating Delgado since June 28, 2012, for bipolar disorder, which was recurrent and severe, and alcohol and cocaine dependence, which were in remission. See id. Their report indicates no improvement. See Tr. at 309. They opined that Delgado had no problem (rated 1 out of 5) with taking care of personal hygiene, caring for his physical needs, using good judgment regarding safety and

dangerous circumstances, asking questions or requesting assistance, and responding appropriately to others in authority.  See Joint Facts at 12–13.  They further opined that he had a slight problem (rated 2 out of 5) with handling frustration appropriately, an obvious problem (rated 3 out of 5) with changing from one simple task to another, and a serious problem (rated 4 out of 5) with interacting appropriately with others in a work environment and with carrying out simple instructions.  See id. at 13.  Finally, they opined that he had a very serious problem (rated 5 out of 5) with using appropriate coping skills to meet the ordinary demands of a work environment, getting along with others without distracting them or exhibiting behavioral extremes, carrying out multi-step instructions, focusing long enough to finish assigned simple activities or tasks, performing basic work activities at a reasonable pace, and performing work activities on a sustained basis.  See id.  The ALJ also did not give the opinion substantial weight. See Tr. at 18–19.

The Joint Statement of Facts refers to both of the above opinions as treating source reports, see Joint Facts at 11–13, but the court notes that only the Bonilla opinion is co-signed by an acceptable medical source and is therefore appropriately considered a treating source opinion.[2]

---

[2] Only an "acceptable medical source" can be considered a treating source.  See 20 C.F.R. § 416.927(a)(2) (2017) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had an ongoing treatment relationship with you.").  Thorpe is an MSW, and Dilworth is an APRN.  See Joint Facts at 12.  At the time of the ALJ's Decision in 2016, neither an MSW nor an APRN was considered an acceptable source.  See 20 C.F.R. § 416.913(a) (2016).  The regulations were amended, effective March 27, 2017, to add as an acceptable medical source a "Licensed Advanced Practice Registered Nurse . . . for impairments within his or her licensed scope of practice," but this change applies "only with respect to claims filed . . . on or after March 27, 2017.  20 C.F.R. § 416.902(a)(7) (2017).  Therefore, the parties mischaracterize the Thorpe opinion as a treating source opinion.  See Joint Facts at 11–13 (discussing the Thorpe opinion under the section labeled "Treating Source Reports").

In addition, Delgado was also examined by a non-treating consultative examiner, Dr. Dodenhoff, MD, on August 22, 2013. See id. at 13. Dr. Dodenhoff conducted a physical examination and opined that Delgado could sit, stand, walk, lift, and handle objects. See id. at 14. As part of the examination, Dr. Dodenhoff also evaluated Delgado's mental status and reported normal findings. See id. He opined that Delgado could understand, remember, and carry out instructions, as well as respond appropriately to supervision and coworkers. See id. The ALJ gave Dr. Dodenhoff's opinion substantial weight. See Tr. at 19.

Finally, two non-examining state medical consultants and two non-examining state psychological consultants provided medical opinions based on a review of the available evidence in the record. At the initial review stage, Dr. Lenworth Ellis, MD, opined that Delgado's asthma was a severe impairment, but that his hepatitis C, bunions, and vision problems were non-severe. See Joint Facts at 16. Based on Delgado's asthma, Dr. Ellis found that Delgado had no exertional limitations, but did have environmental limitations, specifically the need to avoid concentrated exposure to extreme heat or cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. See id. On reconsideration, Dr. Annita Bennett, MD, found that Delgado had no severe impairments and did not note any limitations. See id. at 17. The ALJ gave Dr. Ellis's and Dr. Bennett's opinions reduced weight. See Tr. at 19.

Regarding Delgado's psychological limitations, at the initial review stage, Dr. Thomas Hill, MD, opined that Delgado had moderate limitations in understanding, remembering, and carrying out detailed instructions, working in coordination with others, interacting appropriately with the general public, maintaining socially appropriate

behavior, adhering to basic standards of neatness and cleanliness, and setting realistic goals or plans independently of others.  See Joint Facts at 15.  On reconsideration, Dr. Marc Zekowski, PhD, reached the same conclusions as Dr. Hill as to the limitations stated above.  See id. at 17.  The ALJ gave Dr. Hill's and Dr. Zekowski's opinions great weight.  See Tr. at 19.

## IV.    STANDARD OF REVIEW

It is not the function of the district court to review de novo the ALJ's decision as to whether the claimant was disabled.  See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); see also 42 U.S.C. § 1383(c)(3) (2016) (indicating that review under section 1383(c) is subject to the same review as provided in section 405(g) of title 42).  Instead, the court may only set aside the ALJ's determination as to disability if the decision "is based upon legal error or is not supported by substantial evidence."  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  Substantial evidence requires "more than a mere scintilla," but is a "very deferential standard of review."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447–48 (2d Cir. 2012).  It requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. at 448.  If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive, and the court will not substitute its judgment for the Commissioner's.  See 42 U.S.C. § 405(g) (2016); Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

## V.    DISCUSSION

Section 416.920 of title 20 of the Code of Federal Regulations lays out a five-step sequential evaluation process for determining whether an individual claimant is disabled.  See 20 C.F.R. § 416.920 (2017).

> First, the Commissioner of Social Security considers whether the claimant is currently engaged in "substantial gainful activity." If he is not, the Commissioner proceeds to the second step and determines whether the claimant has a "severe medically determinable physical or mental impairment," that "significantly limits his physical or mental ability to do work activities." If the claimant does suffer such an impairment, the third step is "whether, based on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations." If so, the claimant is <u>per se</u> "disabled" and thus presumptively qualified for benefits. If not, the Commissioner proceeds to the fourth step and examines whether, "despite the claimant's severe impairment, he has the residual functional capacity to perform his past work." If the claimant is unable to perform his past work, the Commissioner finally determines whether there is other work the claimant can perform, taking into consideration the claimant's RFC, age, education, and work experience.

<u>Petrie v. Astrue</u>, 412 Fed. App'x 401, 404 (2d Cir. 2011) (internal citations omitted).

In this case, the ALJ found at step one that Delgado had not engaged in substantial gainful activity since May 7, 2013, the date on which he filed his application. <u>See</u> Tr. at 13. At step two, the ALJ found that Delgado suffered from three severe impairments: asthma, depression, and personality disorder. <u>See id.</u> The ALJ further found that Delgado's hyperlipidemia, left ring finger fracture, hallux valgus deformities (bunions), and polysubstance dependence were non-severe impairments. <u>See id.</u> at 13–14. The ALJ also concluded that Delgado's heptatitis C and potential celiac disease were not sufficiently medically determinable and that his headaches, back pain, and chest pain were symptoms not related to any medically determinable impairments. <u>See id.</u> at 14. However, the ALJ stated that he considered Delgado's headaches, back pain, and chest pain in formulating Delgado's residual functional capacity ("RFC") nonetheless. <u>See id.</u>

At step three, the ALJ then found that none of Delgado's impairments met or medically equaled a listed impairment, specifically considering Listings 3.02, 3.03, 12.04, and 12.08.  See id. at 14–16.  The ALJ next assessed the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) with the ability to stand, walk, and sit 6 hours each out of an 8-hour day and lift 50 pounds occasionally and 25 pounds frequently. However, the claimant must avoid more than occasional exposure to respiratory and pulmonary irritants, extreme heat, cold, humidity, and exposure to animals.  He cannot work in food preparation or food service.  He can maintain concentration, persistence, and pace to carryout simple, routine, repetitive instructions in two-hour increments in a work environment that is goal-oriented and not production paced.  He is able to function alone and relate with work staff when motivated.  He is able to adapt to predictable routines.

Id. at 16.  At step four, the ALJ determined that, based on this RFC, Delgado was able to perform past relevant work as a cleaner and therefore was not disabled.  See id. at 20.

Delgado now makes a vast number of arguments in support of his Motion to Reverse the Decision of the Commissioner.  The court broadly organizes these arguments into four categories.[3]  First, Delgado makes a number of arguments that the ALJ failed to develop the record.  See Mot. to Reverse Mem. at 5–9.  These include, inter alia, that the ALJ failed to obtain certain records, that the ALJ should have ordered a psychological consultative examination in addition to a physical one, and that the ALJ relied on his own lay interpretation of the evidence because there was no treating

---

[3] In doing so, the court notes that, in the future, Delgado's counsel would be wise to evaluate the strength of each argument and advance only those that have merit, rather than adopting an "everything-but-the-kitchen-sink" approach.

source opinion on Delgado's physical limitations. <u>See id.</u> at 5–9, 21–22. Delgado also challenges several aspects of the hearing, including that the ALJ failed to meaningfully canvas Delgado, that the ALJ permitted the VE to appear by telephone, that Delgado's hearing testimony was inaudible and unintelligible, and that the ALJ used an interpreter from his own office rather than an interpreter service. <u>See id.</u> at 5–9.

Second, Delgado argues that the ALJ failed at step two to consider all of Delgado's medically determinable impairments. <u>See id.</u> at 9–12. Specifically, Delgado argues that the ALJ erred in finding that Delgado's bunions and back pain were not severe. <u>See id.</u> Delgado also notes that the ALJ afforded great weight to the state psychological consultants, but omitted anxiety as a severe impairment even though the state consultants considered it to be severe. <u>See id.</u> at 19–21. However, Delgado acknowledges that, even if this was error, it may be harmless because the ALJ did not alter his RFC to reflect the omission of anxiety as a severe impairment. <u>See id.</u> at 21.

Third, Delgado advances a number of arguments that the RFC is not supported by substantial evidence. <u>See id.</u> at 12–26. These include, <u>inter alia</u>, that the ALJ assigned less than substantial weight to Delgado's treating source opinions in violation of the treating physician rule, that the ALJ erred in relying on the state psychological consultants' RFCs because they were based on incomplete information, that the ALJ erred in relying on Dr. Ellis's RFC because he reviewed only three clinical appointments, that the ALJ disregarded Delgado's testimony about his pain, that the ALJ improperly discounted Delgado's depression, that the ALJ improperly relied on Delgado's receipt of benefits, and that the ALJ failed to include social restrictions in the RFC despite Delgado's severe personality disorder. <u>See id.</u>

Finally, Delgado argues that the ALJ erred at step four in finding that Delgado could perform his past work as an industrial cleaner because the ALJ mischaracterized Delgado's past work.  See id. at 1–5.  He argues that this past work was a composite job that involved both laundry and cleaning, which should not have been separated into two jobs of laundry worker and industrial cleaner.  See id.  He further argues that the ALJ did not adequately question him about his past relevant work and that industrial cleaner is not a job that exists in the DOT.  See id.

Given the indiscriminate nature of the arguments advanced, the court does not find it necessary to address each of Delgado's arguments individually.  Rather, the court focuses on the ALJ's failure to develop the record, which the court considers a sufficient basis to warrant remand.  Further development of the record on remand will then likely influence the ALJ's assessment of a number of issues implicated by Delgado's other objections.  The court therefore only addresses a few of these other issues to guide the ALJ's consideration on remand.  See, e.g., Fly v. Colvin, No. 3:14-CV-1840, 2015 WL 5124957, at *5 (N.D. Ind. Aug. 31, 2015) (requiring the ALJ to inquire into the availability of low-cost treatment on remand without reaching whether the failure to do so itself requires remand because the case was already being remanded for other reasons); Waltemire v. Colvin, No. 13-CV-1283-DDC, 2014 WL 3809189, at *12 (D. Kan. Aug. 1, 2014); Lowe v. Colvin, No. 2:12-CV-524-PRC, 2014 WL 4373637, at *8 (N.D. Ind. Sept. 3, 2014).

A.    Duty to Develop the Record

An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately.  See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).  Whether the ALJ has satisfied this obligation or not "must be addressed as a threshold

issue." <u>Downes v. Colvin</u>, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015); <u>see</u> <u>Echevarria v. Secretary of Health & Human Servs.</u>, 685 F.2d 751, 755 (2d Cir. 1982) ("[I]n deciding whether the Secretary's conclusions . . . are supported by substantial evidence, which is the test on review, . . . we must first satisfy ourselves that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.'" (citations omitted)). "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." <u>Downes</u>, 2015 WL 4481088, at *12.

Although the ALJ's obligation to develop the record is heightened where the plaintiff is <u>pro se</u>, <u>see</u> <u>Echevarria</u>, 685 F.2d at 755, the "non-adversarial nature" of social security benefits proceedings dictates that the obligation exists "even when . . . the claimant is represented by counsel." <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must himself affirmatively develop the record' . . . ." (quoting <u>Echevarria</u>, 685 F.2d at 755)). Thus, the ALJ may not merely rely on the claimant's attorney to satisfy the ALJ's duty to develop the record. <u>See, e.g.</u>, <u>Harris v. Colvin</u>, No. 11-CV-1497, 2013 WL 5278718, at *7–*8 (N.D.N.Y. Sept. 18, 2013) (noting "with frustration" the claimant's counsel's failure to provide documents as promised, but nevertheless concluding that "the ALJ's reliance on claimant's counsel to obtain the treating physician records was inadequate").

In this case, Delgado advances a number of arguments with respect to the ALJ's duty to develop the record. The court considers the most problematic to be the ALJ's

failure to obtain a treating source opinion as to Delgado's physical limitations[4] and his failure to seek additional information prior to discounting Delgado's treating psychiatrists as to his psychological limitations.  The court addresses each of these in turn.

### 1.    Lack of Treating Source Opinion on Physical Impairments

The expert opinions of a treating physician are of particular importance to a disability determination.  See Hallet v. Astrue, No. 3:11-cv-1181, 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) ("Because the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder, it is not sufficient for the ALJ to simply secure raw data from the treating physician.").  "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is his opportunity to develop an informed opinion as to the physical status of the patient."  Id.  Because of this, treating physicians are accorded a higher degree of deference than other medical sources under the treating physician rule, which requires that a treating source's medical opinion be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2) (2017).  Even if controlling weight is not given, "some weight may still be attached to that opinion, and the ALJ must still designate and

---

[4] Delgado's Memorandum frames this argument differently.  He argues that, because there is no treating source opinion on Delgado's functional limitations and the ALJ has given reduced weight to the opinions of state consultants, Dr. Ellis and Dr. Bennett, the ALJ relied on his own lay interpretation of treatment notes in determining that Delgado was capable of doing medium work in the RFC.  See Mot. to Reverse Mem. at 21.  Therefore, according to Delgado, that aspect of the RFC is not supported by substantial evidence.  See id.  While this may also be true—the court does not reach a determination of that argument here—the court considers the problem to be more appropriately addressed through the framework of the ALJ's duty to develop the record, which is, as noted above, "a threshold issue" that should be determined first.  See Downes, 2015 WL 4481088, at *12.

explain the weight that is actually given to the opinion." Schupp v. Barnhart, No. 3:02CV103 (WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004).

Because of this, a number of courts in this Circuit have remanded where the ALJ failed to obtain a medical opinion from any of the claimant's treating physicians. See, e.g., Hoehn v. Colvin, No. 14-CV-6401L, 2016 WL 241365, at *3 (W.D.N.Y. Jan. 21, 2016); Swanson v. Colvin, No. 12-CV-645S, 2013 WL 5676028, at *5 (W.D.N.Y. Oct. 17, 2013) ("Absent a reasonable explanation for the failure to obtain an RFC assessment from any treating source, the Court cannot conclude that the ALJ fulfilled her affirmative duty to develop the record. Accordingly, the matter is remanded."); Ayer v. Astrue, No. 2:11-CV-83, 2012 WL 381784, at *3 (D. Vt. Feb. 6, 2012) ("[T]he Court finds that remand is required, given the ALJ's failure to request medical opinions from any of Ayer's treating providers, . . . which resulted in a substantial gap in the record.").

In this case, the record does contain at least one opinion from a treating source, but that opinion only addresses the mental aspects of Delgado's impairments. Bonilla, Dilworth, and Moca, who treated Delgado for bipolar disorder, provided an opinion on May 15, 2013, which was limited to Delgado's mental status and psychological limitations. See Tr. at 281–83. The Joint Facts also characterize the Thorpe opinion as a treating source opinion, although, as noted previously, neither Thorpe nor Dilworth were considered acceptable medical sources at the time of the ALJ's decision. See Joint Facts at 12–13. Whether the Thorpe opinion is mischaracterized as a treating source opinion or not, however, does not significantly affect the court's analysis here. Neither the Thorpe opinion nor the Bonilla opinion opines on any exertional or environmental limitations caused by Delgado's physical impairments. The absence of a

treating source opinion on Delgado's physical limitations is important because the ALJ concluded that asthma was a severe physical impairment. <u>See</u> Tr. at 13.

Thus, while Delgado's case admittedly differs from the cases cited above, in which the record was devoid of any treating source opinion at all, the court does not consider this difference dispositive. Delgado's asthma is unrelated to his psychological impairments and unaddressed by either opinion. Therefore, the ALJ had no reason to believe that the two opinions on Delgado's psychological limitations would be sufficient to fill the gap in the record as to the physical limitations caused by his asthma. <u>Cf. Hernandez v. Berryhill</u>, No. 115-CV-00110 (DAD) (GSA), 2017 WL 3085018, at *6–*7 (E.D. Cal. July 20, 2017), <u>report and recommendation adopted</u>, No. 115-CV-00110 (DAD) (GSA), 2017 WL 3730396 (E.D. Cal. Aug. 30, 2017) (finding that the ALJ's assessment of the claimant's physical impairments was supported by substantial evidence, but holding that the ALJ failed to develop the record by not obtaining a medical opinion on the claimant's psychological impairments); <u>Haymond v. Colvin</u>, No. 1:11-CV-0631 (MAT), 2014 WL 2048172, at *7 (W.D.N.Y. May 19, 2014) (finding that a consultative physical examination did not address the ALJ's need to obtain an opinion from the claimant's mental health providers). Thus, as far as Delgado's physical limitations are concerned, the case is analogous to cases in which there is no treating source opinion.

Indeed, if Delgado's only severe impairment was asthma, the absence of a treating source opinion as to the physical limitations caused by his asthma would likely be an obvious gap triggering the ALJ's duty to develop the record. There is no reason that the presence of additional psychological impairments should lessen the ALJ's duty

to develop the record as to his physical impairments. The record indicates that Delgado was treated at Charter Oak Health Center for asthma on multiple occasions. See, e.g., Joint Facts at 8–10; Tr. at 356–57, 382–87. He also presented at Hartford Hospital Emergency Room for acute exacerbation of chronic asthma and acute bronchitis on August 11, 2012, and for productive cough and lung pain associated with his asthma on April 9, 2015. See Joint Facts at 10–11; Tr. at 445–48, 484. His treating physician at Charter Oak Health Center for his asthma was Dr. Bustamante. See Joint Facts at 8–10. While the record contains treatment notes from Dr. Bustamante, it does not contain her medical opinion as to his physical impairments or any record that the ALJ attempted to obtain such an opinion.

However, the absence of a treating source opinion on Delgado's physical limitations does not end the court's inquiry. "[T]he Second Circuit has held that it is not per se error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician." Sanchez v. Colvin, No. 13-CIV-6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) (citing Tankisi v. Comm'r of Soc. Sec., 521 Fed. App'x 29, 33–34 (2d Cir. 2013)). In Tankisi, the Second Circuit stated that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." Tankisi, 521 Fed. App'x at 34. The Tankisi court described the record in that case as "quite extensive" and "voluminous." Id. Notably, "although it [did] not contain formal opinions on Tankisi's RFC from her treating physicians, it [did] contain formal opinions on Tankisi's limitations from a treating physician." Id. Therefore, the court concluded that remand

was not necessary because the voluminous record permitted the ALJ to make an "informed finding" without a formal opinion from the treating source.  See id.  Courts have distinguished Tankisi and remanded, however, where "the medical record available to the ALJ is not 'robust' enough to obviate the need for a treating physician's opinion."  Hooper v. Colvin, 199 F. Supp. 3d 796, 815 (S.D.N.Y. 2016); see also Downes, 2015 WL 4481088, at *15; Sanchez, 2015 WL 736102, at *5–*9.

The question before the court, then, is "whether, given the specific facts of this case, the administrative record before the ALJ . . . , although lacking the opinion of [a] treating physician, was sufficiently comprehensive to permit an informed finding by the ALJ."  Sanchez, 2015 WL 736102, at *6 (internal quotation marks and citation omitted).  The approach to this question "focuses on circumstances of the particular case, the comprehensiveness of the administrative record, and, at core, whether an ALJ could reach an informed decision based on the record."  Id. at *5 (citing Tankisi, 521 Fed. App'x at 33).

Here, there are a number of reasons to distinguish Delgado's case from Tankisi and others that have upheld the ALJ's decision despite the absence of a treating source opinion.  First, the Second Circuit noted in Tankisi that the treating physician had provided an informal assessment of Tankisi's limitations, even though the record did not contain that physician's formal opinion of Tankisi's RFC.  See Tankisi, 521 Fed. App'x at 34.  Some courts have therefore distinguished Tankisi and remanded for development of the record in cases where the treating physician's notes did not include even an informal assessment of the claimant's RFC.  See DeLeon v. Colvin, No. 3:15-CV-01106 (JCH), 2016 WL 3211419, at *4 (D. Conn. June 9, 2016) ("Records that are deemed to

be complete without a medical source statement from a treating physician contain notes that express the treating physician's views as to the claimant's residual functional capacity, i.e., the treating physician's views can be divined from their notes, and it is only a formal statement of opinion that is missing from the Record."); La Torre v. Colvin, No. 14 CIV. 3615 (AJP), 2015 WL 321881, at *12 (S.D.N.Y. Jan. 26, 2015) ("Unlike the ALJ in Tankisi . . . , ALJ Russak did not have even an informal assessment of La Torre's limitations on which to rely in making his determination."); Swanson, 2013 WL 5676028, at *6.

Like these cases, and unlike Tankisi, the record here contains treatment notes from Delgado's treating physicians at Charter Oak Health, but those treatment notes do not contain an informal assessment of the physical aspects of his RFC.  See Tr. at 353–432, 557–566.  Rather, the treatment notes include only Delgado's symptoms and reason for the visit, his medications, measurements of his vital signs and pain scale, his treatment plan, and the results of a physical examination.  See id.  The results of the physical examination generally describe his condition, but they do not assess the scope of his work-related capabilities or limitations based on that condition.  See, e.g., id. at 406–09 (reporting cough, dyspnea, and wheezing, among other symptoms, and describing his respiratory exam as normal with normal inspection, auscultation, and effort, but making no opinion on whether or how such condition would affect his ability to work).  Thus, the record here is less complete than the record in Tankisi because it contains neither a formal nor an informal assessment by a treating physician as to the physical aspects of Delgado's RFC.

Second, the record from other medical sources is not sufficiently "extensive" or "voluminous" to negate the need for a treating source opinion on RFC. See Tankisi, 521 Fed. App'x at 34. The Commissioner argues that the ALJ's determination of the physical limitations in Delgado's RFC are supported by substantial evidence because he relied on Dr. Dodenhoff's medical opinion. See Mot. to Affirm Mem. at 10. However, the presence of a consulting examiner's report does not always indicate that the record is robust enough to support the ALJ's decision without an opinion from a treating source. Because the treating physician has the "opportunity to develop an informed opinion as to the physical status of a patient" over the course of treatment, the treating physician's opinion is usually "so much more reliable than that of an examining physician who sees the claimant once and performs the same tests and studies as a treating physician." Hallett, 2012 WL 4371241, at *6; see Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) (cautioning "that ALJs should not rely heavily on the findings of consultative physicians after a single examination"); Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) (noting that "a consulting physician's opinions or report should be given limited weight" because "consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day" (quoting Torres v. Bowen, 700 F. Supp. 1306, 1312 (S.D.N.Y. 1988)).

Because of this, some courts in this Circuit have remanded for the ALJ to develop the record by obtaining a treating source opinion, even where the record contained the opinion of a consulting physician who examined the patient. See Downes, 2015 WL 4481088, at *14; Sanchez, 2015 WL 736102, at *6; La Torre, 2015

WL 321881, at *12.  In <u>Downes</u> and <u>Sanchez</u>, the court noted that the consulting physician only examined the claimant once.  <u>See</u> <u>Downes,</u> 2015 WL 4481088, at *14; <u>Sanchez</u>, 2015 WL 736102, at *6 ("Furthermore, the consulting physicians who examined Sanchez did so just once (both on the same day), whereas the consulting physician in <u>Tankisi</u> examined Tankisi twice.").  In order to determine whether the consulting examiner's opinion is sufficient to render the record complete even without a treating source opinion, then, the court must assess the quality and scope of the opinion.  <u>See</u> <u>Sanchez</u>, 2015 WL 736102, at *6–*7 (noting that the consulting psychologists' statements, on which the ALJ appeared to rely, were equivocal); <u>La Torre</u>, 2015 WL 321881, at *12 (noting that the consultative examinations were insufficient to support the ALJ's RFC determination and, therefore, that the ALJ should have further developed the record).

In Delgado's case, Dr. Dodenhoff examined him only once on August 22, 2013. <u>See</u> Joint Facts at 13–14.  The ALJ gave substantial weight to Dr. Dodenhoff's opinion, <u>see</u> Tr. at 19, but the opinion is brief and not sufficiently detailed to support the ALJ's RFC determination, <u>see</u> <u>id.</u> at 304–05.  The opinion itself is two pages long, and the RFC assessment consists of four sentences, only one of which addresses Delgado's physical limitations.  <u>See</u> <u>id.</u> at 304–05.  Dr. Dodenhoff states: "The [patient] is able to sit, stand, walk, lift, and handle objects.  His hearing and speaking are intact.  He was able to understand, remember and carryout instructions.  He is able to respond appropriately to supervision, and coworkers."  <u>Id.</u> at 305.

Dr. Dodenhoff's opinion, however, does not specify how long Delgado can sit, stand, or walk, how much weight he can lift, or how frequently.  Nor does the opinion

address the level of work Delgado can perform (e.g., medium or light).  Therefore, the

opinion is not itself robust or detailed enough to support the ALJ's RFC finding that

Delgado can "perform medium work . . . with the ability to stand, walk, and sit 6 hours

each out of an 8-hour day and lift 50 pounds occasionally and 25 pounds frequently."

Id. at 16.  Additionally, Dr. Dodenhoff provides no opinion as to Delgado's

environmental limitations, such as the degree to which he can be exposed to pulmonary

irritants, extreme temperatures, or humidity.  He therefore provides no support for those

aspects of the ALJ's RFC.  This gap may be particularly important in light of Delgado's

asthma diagnosis, which is likely to affect these environmental limitations, especially

given that Delgado testified that the reason he could not continue his past work as a

laundry worker was due to the heat.  See Joint Facts at 19; Tr. at 33.

     In addition to Dr. Dodenhoff's opinion, the record also contains the opinions of

two state medical consultants, Dr. Ellis and Dr. Bennett.  See Joint Facts at 16–17.

However, neither Dr. Ellis nor Dr. Bennett examined Delgado, and the ALJ gave both

opinions reduced weight because "they did not adequately consider the limiting effects

of the claimant's asthma which causes exertional limitation and the need to avoid

certain environmental conditions."  Id. at 19.  Dr. Bennett did not find Delgado's asthma

to be a severe impairment and therefore did not consider any physical limitations

caused by his asthma (or any other physical impairments).  See id. at 75.  Dr. Ellis did

find Delgado's asthma to be severe, but found no exertional limitations and identified

only environmental limitations.  See id. at 61–62.  The ALJ did not follow Dr. Ellis's

assessment as to Delgado's environmental limitations, as Dr. Ellis assessed the need to

avoid concentrated exposure to certain environmental factors while the ALJ concluded

that Delgado needed to avoid more than occasional exposure.  <u>Compare</u> Tr. at 16; <u>with</u> <u>id.</u> at 61–62.  Therefore neither opinion supports the exertional or environmental aspects of the ALJ's RFC.  <u>See</u> Tr. at 16.

Thus, even taken together, Dr. Dodenhoff's, Dr. Ellis's, and Dr. Bennett's opinions are not sufficiently robust to have enabled the ALJ to make an informed opinion as to the physical aspects of Delgado's RFC without a treating source opinion. The record here is a "far cry from that in <u>Tankisi</u>," and the absence of a complete and reliable functional assessment of Delgado's physical limitations is an obvious gap warranting remand.  <u>See</u> <u>Sanchez</u>, 2015 WL 736102, at *6; <u>Hooper</u>, 199 F. Supp. at 814 ("[F]or an ALJ to make a disability determination without seeking any treating physician opinion, there must be 'no obvious gaps in the administrative record,' and the ALJ must '[possess] a complete medical history.'" (quoting <u>Rosa</u>, 168 F.3d at 83 n. 5)). Despite this gap, the court is not aware of anything in the record indicating that the ALJ attempted to contact Dr. Bustamante or any other treating source at Charter Oak Health Center to obtain a medical opinion, nor has the Commissioner pointed the court to any such attempts.  The ALJ has not indicated that contacting Delgado's treating sources would be futile or offered any other reasonable explanation for his failure to obtain a treating source opinion on Delgado's physical limitations.  <u>See</u> <u>Ubiles v. Astrue</u>, No. 11-CV-6340T MAT, 2012 WL 2572772, at *8 (W.D.N.Y. July 2, 2012) ("Without some reasonable explanation for the ALJ's failure to obtain these records, the [C]ourt is not satisfied that the ALJ fulfilled his affirmative obligation to develop the record." (quoting <u>Hilsdorf v. Comm'r of Social Sec.</u>, 724 F. Supp. 2d 330, 345 (E.D.N.Y.2010)).

The court thus concludes that the ALJ failed to fulfill his duty to develop the record and, in this case, such failure is legal error that justifies remand. See Wilbur v. Colvin, No. CIV.A. 5:13-110, 2014 WL 2434955, at *3 (N.D.N.Y. May 30, 2014) ("An administrative law judge's failure to develop the record adequately is an independent ground for vacating the administrative law judge's decision and remanding the case."). On remand, the ALJ should obtain a medical opinion from Delgado's treating physicians at Charter Oak Health Center, including Dr. Bustamante who treated him for his asthma, among other things, and any other treating source the ALJ identifies in the record. The court notes that the record appears to indicate that, in addition to Dr. Bustamante, Delgado was also treated by Dr. Teleb, Dr. Winters, Dr. Castro, and Dr. Patel at Charter Oak Health Center, as well as Dr. Swailes at Hartford Hospital Liver Transplant Program. See Joint Facts at 7–10.

Because the ALJ found that asthma was a severe physical impairment, the court bases its decision to remand on the gap in the record created by the absence of a treating source opinion on the functional limitations caused by Delgado's asthma. However, the court notes that the record also contains gaps as to the physical limitations caused by Delgado's other non-severe impairments, which must also be considered when determining his RFC. See 20 C.F.R. § 416.945(a)(2) (2017). The court need not decide, though, whether the need to obtain a treating source opinion regarding these other impairments would independently require remand. Because the court is already remanding for development of the record relating to physical limitations caused by Delgado's asthma, the court also instructs the ALJ on remand to seek medical opinions from Delgado's treating physicians as to the severity of, and functional

limitations caused by, his other alleged physical impairments.  These may include, but are not limited to, Delgado's bunions, back and chest pain, headaches, hyperlipidemia, hepatitis C, and celiac disease.

### 2. Need to Recontact Treating Source on Psychological Impairments

In addition to the absence of a treating source opinion on Delgado's physical limitations, the record also contains gaps and inconsistencies as to Delgado's psychological limitations.  As noted previously, the record contains one treating source opinion on Delgado's psychological impairments—the Bonilla opinion dated May 15, 2013, and authored by Bonilla, Dilworth, and Moca.  <u>See</u> Tr. at 281–83.  The parties also mischaracterize the Thorpe opinion, dated October 21, 2013, and authored by Thorpe and Dilworth, as a second treating source opinion.[5]  <u>See id.</u> at 309–12; Joint Facts at 12–13.  The court does not consider this mischaracterization to fundamentally alter its analysis, however, as the ALJ did not distinguish between the two opinions in assigning weight.  <u>See</u> Tr. at 18–19.  The ALJ declined to give either opinion substantial weight and relied instead on the opinions of Dr. Dodenhoff and two non-examining state psychological consultants.  <u>See id.</u> at 19.  In doing so, the ALJ erred by failing to fully develop the record before discounting Delgado's treating source's opinion.  The ALJ's failure to recontact Dr. Moca regarding the Bonilla opinion is sufficient to justify remand. The court thus focuses its analysis on that opinion.  However, on remand, the ALJ is advised to recontact both sets of providers.  <u>See</u> 20 C.F.R. § 416.920b(b)(2)(i) (2017) (permitting the ALJ to recontact "your medical source," without limiting the provision to treating sources).

---

[5] <u>See</u> <u>supra</u> page 6 and note 2.

The Second Circuit has held that "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." See Rosa, 168 F.3d at 79. Where the record contains a treating source opinion, but the opinion is incomplete, unclear, or inconsistent, the Second Circuit has held that the ALJ's duty to develop the record requires the ALJ to seek additional information. See Selian, 708 F.3d at 421 (holding that the ALJ should have recontacted the physician before relying on his opinion, where the physician's opinion was "remarkably vague"); Schaal, 134 F.3d at 505; Cammy v. Colvin, No. 12-CV-5810 (KAM), 2015 WL 6029187, at *16 (E.D.N.Y. Oct. 15, 2015); Ashley v. Comm'r of Soc. Sec., No. 5:14-CV-00040, 2014 WL 7409594, at *3–*4 (N.D.N.Y. Dec. 30, 2014). The regulations provide a number of methods for seeking additional information when the evidence is insufficient or the ALJ cannot reach a conclusion as to the claimant's disability. See 20 C.F.R. § 416.920b(b)(2). Often, the most effective method of seeking additional information is by recontacting the treating physician regarding his or her incomplete or inconsistent opinion.[6] The regulations also permit the ALJ to ask the claimant to undergo a consultative examination. See 20 C.F.R. § 416.920b(b)(2)(iii).

---

[6] Previously, the SSA's regulations required the ALJ to first recontact the treating physician when additional evidence was required. See 20 C.F.R. § 416.912(e)(1) (2011) ("We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available."). However, the regulations were amended in 2012 to give the ALJ more flexibility in determining how best to obtain additional information. See How We Collect and Consider Evidence of Disability, 77 FR 10651-01, at 10651. The regulations now provide that recontacting the treating physician is one option for obtaining additional evidence. See 20 C.F.R. § 416.920b(b)(2)(i) (2017) ("We may recontact your medical source.").

While this amendment has given the ALJ greater flexibility in determining how to obtain additional information, it has not eliminated the ALJ's obligation to develop the record when additional information is needed due to the vagueness, incompleteness, or inconsistency of the treating source's opinion. See Gabrielsen v. Colvin, No. 12-CV-5694 (KMK) (PED), 2015 WL 4597548, at *6 (S.D.N.Y. July 30, 2015) ("Nonetheless, courts in the Second Circuit have concluded, citing these regulations, that the ALJ still has an obligation to re-contact the treating physician in some cases. . . . Accordingly, the change in regulations does not mean that the ALJ here had no duty to re-contact the treating physician."); Nunez v.

In this case, the ALJ discounted the Bonilla opinion for vagueness. The ALJ specifically noted its insufficiency in addressing Delgado's functional limitations as one reason for giving it less than substantial weight. See Tr. at 19 ("[T]he opinions are quite vague and do not describe precise functional limitations which might be more relevant when determining residual functional capacity.").[7] Rather than reject the opinion on this basis, however, the ALJ should have recontacted Bonilla, Dilworth, and Moca to clarify the portions of the opinion he considered to be vague and to elaborate on Delgado's functional limitations. See Zurek v. Colvin, No. 6:15-CV-0453 (GTS), 2016 WL 4466791, at *6–*8 (N.D.N.Y. Aug. 24, 2016); Isernia v. Colvin, No. 14-CV-2528 (JEB), 2015 WL 5567113, at *10 (E.D.N.Y. Sept. 22, 2015) ("The law is clear beyond cavil that where, as here, a treating physician's opinion is found by the ALJ to be vague or unclear, it is incumbent on the ALJ to recontact the treating physician for clarification of his or her opinion."); Ubiles, 2012 WL 2572772, at *9 ("[I]t is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits. It was incumbent on the ALJ to request a function-by-function assessment of Plaintiff's physical limitations from [the

---

Berryhill, No. 16 CIV. 5078 (HBP), 2017 WL 3495213, at *16 (S.D.N.Y. Aug. 11, 2017) ("[T]he current amended regulations . . . give the ALJ more discretion to determine the best way to resolve the inconsistency or insufficiency based on the facts of the case . . . . However, the regulations continue to contemplate the ALJ recontacting treating physicians where the additional information needed is directly related to that source's medical opinions." (alterations in original) (internal quotation marks and citations omitted)). The SSA acknowledges that, in many cases, recontacting the treating physician will still be the most effective and efficient means of obtaining additional information. See 77 FR 10651-01, at 10652 ("In fact, we expect that adjudicators will often contact a person's medical source(s) first whenever the additional information sought pertains to findings, treatment, and functional capacity, because the treating source may be the best source regarding these issues.").

[7] The court notes the ALJ's own inconsistency in his evaluation of the medical opinions in the record: he discounted the Bonilla opinion and Thorpe opinion for vagueness, but gave substantial weight to Dr. Dodenhoff's opinion without mentioning its vagueness, despite the fact that Dr. Dodenhoff's RFC assessment consists only of four brief sentences. See Tr. at 305.

physician] and recontact [the physician] for clarification of his 'vague and non-specific' limitations.").

Additionally, the ALJ also gave the opinions less weight because "they are inconsistent with the evidence of record." See id. The regulations "require the SSA to attempt to resolve inconsistencies or insufficiencies in the medical record." Cancel v. Colvin, No. 14–CV–2034, 2015 WL 865479, at *4 (S.D.N.Y. Mar. 2, 2015); see also Ashley, 2014 WL 7409594, at *3 ("An ALJ is duty-bound to 'seek any clarification of the perceived inconsistencies in [a treating physician's] findings about the claimant's [ ] limitations,' and failure to do so amounts to legal error requiring remand." (alterations in original) (citation omitted)). At the reconsideration stage, the record indicates that the state psychological consultants and claim developer recognized the existence of contradictions in Bonilla's opinion and left messages with her to seek clarification. See Tr. at 73 (noting a contradiction between the initial diagnosis of polysubstance abuse and adjustment disorder and the opinion's diagnosis of bipolar disorder, as well as a contradiction between the "extreme ratings" in the opinion with a prior note, dated October 24, 2013, in which Delgado denied cognitive issues). The record does not indicate that the SSA received a response from Bonilla prior to the reconsideration decision on January 21, 2014, nor does the record contain any clarification on these inconsistencies. See id. Thus, both the record and the ALJ's own reason for discounting the opinions identify inconsistences that would have required the ALJ to seek additional information.

As with the failure to obtain a treating source opinion discussed above, however, failure to seek additional information to clarify an insufficiency or inconsistency is not per

se error requiring remand.  See Prince v. Berryhill, No. 3:16-CV-01472 (JCH), 2018 WL

495677, at *4 (D. Conn. Jan. 19, 2018) ("If it is not always error to decide a disability

claim without a treating physician opinion, it follows that the ALJ is not always required

to re-contact a treating physician where the opinion is inadequate.").  When determining

whether the failure to seek additional information regarding an incomplete or

inconsistent treating source opinion is error requiring remand, courts in this Circuit have

applied a standard similar to that in Tankisi articulated above.  See id. ("Assessing

whether it was legal error for an ALJ to fail to request clarification from a treating

physician is a case-specific inquiry that turns on whether an ALJ could have reached an

informed decision based on the record."); Zurek, 2016 WL 4466791, at *7 ("An ALJ is

not required to seek additional information absente 'obvious gaps' in the administrative

record that preclude an informed decision.  However, additional evidence or clarification

is sought when there is a conflict or ambiguity that must be resolved, when the medical

reports lack necessary information, or when the reports are not based on medically

acceptable clinical and laboratory diagnostic techniques."); Wilbur, 2014 WL 2434955,

at *3–*4.

    In this case, the ALJ based the psychological aspects of his RFC determination

on the opinions of Dr. Hill, Dr. Zekowski, and Dr. Dodenhoff.  For the reasons stated

below, the court does not consider this record sufficient for the ALJ to make an informed

decision.  First, the ALJ gave great weight to the opinions of Dr. Hill and Dr. Zekowski.

See Tr. at 19.  Both Dr. Hill and Dr. Zekowski, however, are state psychological

consultants who did not examine Delgado, but only reviewed the medical evidence

contained in the record.  See 20 C.F.R. § 416.927(c)(1) ("Generally, we give more

weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."); Rodriguez v. Colvin, No. 13CV07607 DF, 2015 WL 1903146, at *25 (S.D.N.Y. Mar. 31, 2015) ("As such consultants often do not examine the claimant, this means that their opinions are frequently to be accorded less weight than the opinions of treating and examining sources."). While the SSA recognizes that state consultant opinions are expert medical opinions, see 20 C.F.R. § 416.927(e), the reasons stated above for preferring a treating source opinion over a non-treating examiner's opinion are even more applicable when compared to a non-examining consultant's opinion. Cf. Selian, 708 F.3d at 419; Cruz, 912 F.2d at 13; Hallett, 2012 WL 4371241, at *6.

Here, there are also additional reasons to question the sufficiency of Dr. Hill's and Dr. Zekowski's opinions to establish a complete record. At both the initial and reconsideration stages, the SSA's Disability Determination Explanations ("DDEs") indicate an awareness of the gaps in the record and the need to recontact Delgado's treating sources. See Tr. at 57, 72–74. For example, both DDEs note that the Bonilla opinion is only a partial opinion, missing one out of the four pages. See id. at 57, 72. While the consultants note the need to obtain the complete opinion, the record does not indicate that one was ever received. See id. at 281–83. The consultants did, however, request and obtain a more recent opinion, the Thorpe opinion dated October 21, 2013. See id. at 74, 309–12. Additionally, as noted above, the DDE at reconsideration notes contradictions in the Bonilla opinion, but does not indicate that the contradictions were clarified or resolved prior to the issuance of Dr. Zekowski's opinion. See id. at 73.

Therefore, Dr. Hill and Dr. Zekowski based their opinions on a record with the same insufficiencies and inconsistencies as the ALJ.

Both DDEs also indicate that a consultative examination was required because "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim." Id. at 57, 74. Dr. Dodenhoff provided a medical consultative examination on August 22, 2013, prior to the initial disability determination, dated August 27, 2013. See id. at 55. No psychological consultative examination was ever performed, however, and no additional medical consultative examination was ordered at the reconsideration stage, despite the fact that the reconsideration DDE contained the same note as the initial DDE indicating that one was necessary. See id. at 74.

The Commissioner first argues that the DDE's note does not specify whether it required a psychological or physical consultative examination. See Mot. to Affirm Mem. at 24. However, as noted above, the DDE contains correspondence from the state psychological consultants identifying gaps in the record and contradictions with the Bonilla opinion. See Tr. at 72–73 (noting correspondence from Dr. Zekowski stating that "[i]f the [treating source] does not cooperate we would need a CE"). Thus, taken together, these sections of the DDE should have indicated to the ALJ a need for a psychological consultative examination in addition to the physical examination performed by Dr. Dodenhoff.

The Commissioner then argues that, even if a psychological consultative examination was necessary, Dr. Dodenhoff's examination satisfied that requirement because his opinion included an evaluation of Delgado's mental status. See Mot. to Affirm Mem. at 18, 25. The court does not consider Dr. Dodenhoff's examination

sufficient to obviate the need for a psychological consultative examination, however, because of the brevity and vagueness of his mental status evaluation. Cf. Haymond, 2014 WL 2048172, at *7 ("Although Plaintiff underwent a consultative physical examination, she was not asked to attended [sic] an examination by a consultative psychologist. Thus, no psychiatrist, psychologist, social worker, or counselor examined Plaintiff and gave an opinion regarding the functional limitations caused by her multiple and long-standing mental impairments."); Heuer v. Astrue, No. 2:11-CV-51 (NAB), 2012 WL 3637781, at *19 (E.D. Mo. Aug. 23, 2012) (finding that "a cursory mental status examination by a pulmonologist" was insufficient evidence on which to base the ALJ's determination of the claimant's psychological limitations or to discount the mental health opinion of a treating psychiatrist).

First, the record here does not indicate that Dr. Dodenhoff has any expertise or specialty in psychiatry or psychology. Second, his two-page opinion focuses on his physical examination of Delgado with only two brief lines observing Delgado's mental status: "pt. was casually dressed. No: LOA, FOI, S/H ideations. Mood/Affect appropriate [pt. did not appear anxious today]." Tr. at 305. While the "Assessment/Plan" section records "insomnia" and "depression/anxiety," the opinion makes no mention of bipolar disorder, which Delgado's treating sources had previously diagnosed. See id. at 305; Joint Facts at 3. Based on this cursory evaluation, Dr. Dodenhoff opines on the psychological limitations of Delgado's RFC in three sentences: "His hearing and speaking are intact. He was able to understand, remember and carryout instructions. He is able to respond appropriately to supervision, and coworkers." Tr. at 305. These few sentences do not substitute for a consultative

examination by a psychologist, nor are they sufficiently detailed to substantiate the state consultants' opinions or the ALJ's RFC determination.  For instance, Dr. Dodenhoff does not specify the nature of the instructions Delgado can understand and carry out (e.g., simple or detailed), the period for which he can concentrate on such instructions, the pace and nature of his work environment, or his ability to adapt.  The ALJ's RFC, however, nonetheless includes such details.  See id. at 16.

Given the absence of a consultative psychological examination, the limited nature of Dr. Dodenhoff's mental status evaluation, and the gaps and contradictions in the record reviewed by Dr. Hill and Dr. Zekowski, the record here was not robust enough to permit the ALJ to make an informed finding regarding the psychological limitations of the RFC without further development of the record.  The ALJ's duty to develop the record thereby required him to seek additional information prior to discounting the opinion of Delgado's treating sources.  His failure to do so is legal error warranting remand.[8]  On remand, the ALJ is advised to recontact Bonilla, Dilworth, and

---

[8] The court notes that the SSA left messages with Jeannie Dilworth in 2013 and January of 2014 in an attempt to further develop the record at the reconsideration stage.  See Tr. at 73–74.  However, such actions by the SSA, occurring nearly two years prior to the hearing before the ALJ, do not absolve the ALJ of his affirmative duty to develop the record.  The case law makes clear that that duty belongs to the ALJ.  See Rosa, 168 F.3d at 79.

There is no evidence in the record here that the ALJ attempted to recontact Delgado's treating sources at Hartford Behavioral Health, nor that he offered reasonable explanations for not doing so.  See Williams v. Barnhart, No. 05 CIV. 7503 (JCF), 2007 WL 924207, at *7 (S.D.N.Y. Mar. 27, 2007) ("[T]he ALJ must enter into the record his attempts to develop the medical evidence."); Ubiles, 2012 WL 2572772, at *8 ("Without some reasonable explanation for the ALJ's failure to obtain these records, the [C]ourt is not satisfied that the ALJ fulfilled his affirmative obligation to develop the record." (quoting Hilsdorf, 724 F. Supp. 2d at 345).  While it is possible that the ALJ concluded that recontacting Dilworth would be futile after the SSA's efforts, the ALJ never stated that he reached such a conclusion, and the court believes such a conclusion would have been a stretch, based only a few unanswered messages left nearly two years ago.

Furthermore, even if the SSA's attempts to contact Dilworth could be attributable to the ALJ, merely leaving messages with the treating source would not likely be sufficient to satisfy the ALJ's duty to develop the record.  Cf. Blair v. Colvin, No. 16-CV-5983 (RJS) (KNF), 2017 WL 4339481, at *5 (S.D.N.Y. May 15, 2017), report and recommendation adopted, No. 16-CV-5983 (RJS), 2017 WL 4342123

Moca to obtain the missing page of the Bonilla opinion, seek clarification of any inconsistencies identified, and request a more detailed function-by-function analysis. See 20 C.F.R. § 416.920b(b)(2)(i) (2017). Because the court is already remanding on this basis, the court also instructs the ALJ to recontact Thorpe and Dilworth regarding the Thorpe opinion, even though the opinion is not appropriately characterized as a treating source opinion. The ALJ may also consider ordering a consultative psychological examination if necessary. See 20 C.F.R. § 416.920b(b)(2)(iii).

### 3. Other Allegedly Missing Records

Delgado also identifies several other aspects of the record that he considers to be incomplete. See Mot. to Reverse Mem. at 7–8. Specifically, he indicates that there are no records from Hartford Behavioral Health after January 23, 2015, Charter Oak Health Center after May 14, 2015, from Hartford Hospital Liver Transplant Program after May 20, 2015, or from Hartford Hospital after April 9, 2015. See id. He also argues that the record does not contain Delgado's disability determinations from the state of Connecticut. See id. at 8. The Commissioner argues, however, that Delgado has not identified that any such records exist after those dates, nor has he produced the records from the state disability determinations on appeal. See Mot. to Affirm Mem. at 25. The Commissioner further argues that, without identifying the records or their contents, Delgado has not shown that the records would have changed the weight of the evidence. See id.

---

(S.D.N.Y. Sept. 27, 2017) (finding that the ALJ did not make every reasonable effort to obtain evidence from treating sources where the ALJ sent initial requests for information but failed to follow up); Williams, 2007 WL 924207, at *7 (noting that, in the pro se context, reasonable efforts require "more than merely twice requesting reports from treating physicians," but rather should include "issuing and enforcing subpoenas requiring the production of evidence, and advising the plaintiff of the importance of the evidence").

While the Commissioner may be correct, the court need not determine whether the absence of such records would be sufficient to warrant remand on their own. Because the court is already remanding the case to the ALJ to develop the record for the reasons stated above, the court advises the ALJ on remand to also make reasonable efforts to obtain any more recent treatment records and Delgado's state disability determinations.  See Fly, 2015 WL 5124957, at *5; Waltemire, 2014 WL 3809189, at *12; Lowe, 2014 WL 4373637, at *8.  The court also instructs the ALJ to obtain any additional information that was still pending at the time of the ALJ's prior Decision, including, but not limited to, whether Delgado has now undergone surgery for his bunions and whether the results of his biopsy for celiac disease have been confirmed.  See Joint Facts at 9–10; Tr. at 38–39; Mot. to Reverse Mem. at 8.

B.    Additional Issues

Delgado's Motion to Reverse appears to request reversal and an order for payment of benefits.  See Mot. to Reverse at 1; Mot. to Reverse Mem. at 28 ("The final decision should be reversed and the claim allowed as of alleged disability onset date."). Section 405(g) of title 42 of the United States Code provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2016); U.S.C. § 1383(c)(3) (2016) (indicating that review under section 1383(c) is subject to the same review as provided in section 405(g) of title 42).  "When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Secretary for further development.  On the other hand, we have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose."

Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) (citations omitted). In this case, because the ALJ erred by failing to develop the record, remand for further development of evidence is appropriate. Therefore, the court grants the Motion to Reverse, but orders remand for further proceedings consistent with this opinion rather than payment of benefits, as requested by Delgado.

The court need not address all of Delgado's other arguments, which are numerous, because "upon remand and after a de novo hearing, [the ALJ] shall review this matter in its entirety." Koutrakos v. Astrue, No. 3:11-CV-306 (CSH), 2012 WL 1283427, at *7 (D. Conn. Jan. 9, 2012), report and recommendation adopted, 906 F. Supp. 2d 30 (D. Conn. 2012). The court notes that, because many parts of the ALJ's analysis are likely based on his assessment of the record as a whole, the ALJ's analysis throughout the Decision may change when the record is fully developed. Therefore, it would be appropriate for the ALJ to revisit his conclusions at all steps of the Decision in light of the full record, including the new opinion evidence from one or more additional treating sources. See Sanchez, 2015 WL 736102 at *9. For example, a treating source opinion on Delgado's physical impairments may alter the ALJ's conclusions at step two as to what conditions qualify as severe medically determinable impairments because the prior Decision was made with incomplete information as to certain of Delgado's alleged physical impairments. See, e.g., Tr. at 13 (noting that Delgado may have celiac disease, but "this condition has not yet been established with medically acceptable diagnostic and/or laboratory techniques"); id. at 14 (finding that Delgado's headache, back pain, and chest pain were not related to any medically determinable impairments because "the record does not contain objective evidence in the form of medically

acceptable laboratory or diagnostic techniques that would support a link between these symptoms and medically determinable impairments").  Additionally, a fully developed record may alter the ALJ's application of the treating source rule to the Bonilla opinion and the weight assigned to other medical opinions, as one factor in assigning weight is the opinion's consistency with the record as a whole.  See, e.g., id. at 19 (discounting the Bonilla opinion and the Thorpe opinion in part because they "are inconsistent with the evidence of record").  Such changes may in turn affect the ALJ's RFC determination and his assessment of steps four and five.

While the court does not consider it necessary to address all of Delgado's remaining arguments, the court nonetheless addresses a few additional issues to guide the ALJ's consideration on remand in the interest of avoiding future remands.

### 1.    Classification of Past Work Under Step Four

At step four, the ALJ considers whether, based on the claimant's RFC, he is capable of performing his past relevant work.  See 20 C.F.R. § 416.920(a)(4)(iv) (2017).  If the ALJ determines that the claimant can still do the past relevant work, the claimant is not disabled.  See id.  The claimant bears the burden "to show an inability to return to her previous specific job and an inability to perform her past relevant work generally."  Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted).  Social Security Ruling 82-62 states, "Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.  Sufficient documentation will be obtained to support the decision."  Titles II and XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General, SSR 82-62 ("SSR 82-62"), 1975-1982 Soc. Sec. Rep. Serv. 809, at *3 (1982).

In this case, step four was dispositive of Delgado's claim because the ALJ determined that Delgado was capable of performing past relevant work and therefore not disabled.  See Tr. at 20.  At the hearing, Delgado testified that his past relevant work consisted of one job that he performed at La Quinta hotel for almost three years.  See id. at 33.  He described the job as follows: "I worked at the laundry.  I also took out the trash and cleaned toilets.  I had problems with that job because it was extremely hot.  It was affecting my asthma."  Id.  His work background form reported that his duties included "cleaning sheets, drying and folding, minor hotel repairs, outside cleanliness [and] maintenance."  Id. at 241.

The vocational expert at the hearing indicated that he had sufficient information based on Delgado's testimony and a review of the file to classify Delgado's past relevant work.  See id. at 33.  He then described Delgado's past work as two jobs— laundry worker and industrial cleaner, both of which are unskilled, medium work.  See id. at 44–45.  Delgado's attorney did not object to this classification.  See id. at 45. Considering a hypothetical that closely matches the ALJ's ultimate RFC determination, the vocational expert opined that someone with those limitations could work as an industrial cleaner, but not as a laundry worker.  See id. at 46.  Relying on the vocational expert, the ALJ thus concluded that Delgado was capable of performing past relevant work as a cleaner and therefore was not disabled.  See id. at 20.

In challenging the ALJ's step four analysis, Delgado makes three arguments. First, Delgado argues that the vocational expert and the ALJ mischaracterized his past relevant work.  See Mot. to Reverse Mem. at 1–5.  He argues that his past relevant work was not two separate jobs, but one composite job consisting of duties of both a

laundry worker and cleaner.  See id.  Therefore, the ALJ should not have found that he

was capable of past relevant work if he could only perform the duties of one of the

components of the job.  See id.  Second, Delgado argues that industrial cleaner is not a

job that exists in the Dictionary of Occupational Titles ("DOT").  See id. at 4.  Third, he

argues that, even if industrial cleaner was a job in the DOT, "the claimant must be able

to perform his past relevant work as actually performed."  See id.

    First, the court notes that the Commissioner is correct that industrial cleaner is a

job within the DOT, number 381.687-018.  See DOT, available at

https://occupationalinfo.org/38/381687018.html.  Therefore, there is no merit to

Delgado's second argument.  The court focuses instead on the issue of whether

Delgado's past relevant work should have been analyzed as a composite job.

    Generally, the ALJ can find that the claimant is capable of past relevant work in

two ways.  Social Security Ruling 82-61 makes clear that a claimant is not disabled

when he retains the RFC to perform either "[t]he actual functional demands and job

duties of a particular past relevant job" or "[t]he functional demands and job duties of the

occupation as generally required by employers throughout the national economy."

Titles II & XVI: Past Relevant Work-the Particular Job or the Occupation as Generally

Performed, SSR 82-61 ("SSR 82-61"), 1975-1982 Soc. Sec. Rep. Serv. 836, at *2

(1982); see also Jasinski, 341 F.3d at 185 ("This inquiry requires separate evaluations

of the previous specific job and the job as it is generally performed.").  Therefore, the

ALJ is not typically required to find that the claimant can perform the past relevant work

as actually performed if he finds that the claimant can perform the job as generally

performed.

However, in the context of composite jobs, the analysis is different. A composite job is one that "ha[s] significant elements of two or more occupations and, as such, ha[s] no counterpart in the DOT." SSR 82-61, at *2; see also Long v. Berryhill, No. 16-CV-760S, 2018 WL 618119, at *4 (W.D.N.Y. Jan. 30, 2018). In its Program Operations Manual System ("POMS"), the SSA elaborates, "The claimant's PRW [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant." See Social Security Administration, Program Operations Manual System (POMS), DI 25005.020 Past Relevant Work (PRW) as the Claimant Performed It ("POMS DI 25005.020"), available at https://s044a90.ssa.gov/apps10/poms.nsf/lnx/0425005020.[9] POMS also specifies that, if the SSA determines that the past relevant work was a composite job, it must explain why. Id.

Composite jobs "will be evaluated according to the particular facts of each individual case." SSR 82-61, at *2. POMS instructs: "When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job. A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" POMS DI 25005.020; see also POMS, DI 25005.025 Past Relevant Work (PRW) as Generally Performed in the National Economy, available at https://secure.ssa.gov/poms.NSF/lnx/0425005025 ("If there is no occupational

---

[9] The Second Circuit has held that "POMS guidelines are entitled to 'substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute.'" Lopes v. Dep't Soc. Servs., 696 F.3d 180, 186 (2d Cir. 2012) (quoting Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998)).

counterpart in the DOT, you cannot evaluate past relevant work (PRW) as generally performed in the national economy unless you have evidence from other reliable occupational information that provides this.").

The Second Circuit has not yet discussed how an ALJ should assess composite jobs at step four. However, a number of courts have determined that, if past relevant work is a composite job, "it is reversible error for the ALJ to make a Step Four finding that a claimant is not disabled merely because he or she can perform the tasks required for one of the two DOT job descriptions." Long, 2018 WL 618119, at *5 (quoting West v. Berryhill, No. 4:16-CV-852 (SPM), 2017 WL 4264126, at *5–*6 (E.D. Mo. Sept. 26, 2017)); see also Lyda v. Colvin, 221 F. Supp. 3d 1254, 1259 (D. Colo. 2016) ("[A] step four determination will be supported only if substantial evidence shows the plaintiff can perform the requirements of all the component jobs."); Shealy v. Colvin, No. CIV.A. 8:13-2383 (RMG), 2015 WL 467726, at *12–*13 (D.S.C. Feb. 4, 2015).

In Delgado's case, the record contains only minimal information about Delgado's duties at his past work, but the evidence appears to indicate at least the possibility that his past relevant work was a composite job. Based on Delgado's testimony and the work background form, some of his duties were those of a laundry worker, such as doing laundry, cleaning sheets, folding, and drying, while others of his duties were those of a cleaner, such as cleaning toilets and taking out trash. See Tr. at 33, 241. Therefore, the record appears to indicate that Delgado's past relevant work contained significant elements of two occupations. Despite this, neither the vocational expert nor

the ALJ considered whether Delgado's past relevant work at La Quinta was a composite job or not.  See id. at 20, 44–46.[10]

The Commissioner cites to two cases in which the court declined to find that the claimant's past relevant work was a composite job with no counterpart in the DOT because the past job could be classified instead as two jobs under the DOT.  See Clark v. Colvin, No. 1:13-CV-01124 (MAT), 2016 WL 4804088, at *4 (W.D.N.Y. Sept. 13, 2016) (finding that the claimant's past relevant work was properly classified as both a hairdresser and a beauty shop manager rather than as a composite job because both were individually listed in the DOT, and concluding that the claimant was not disabled because she was able to perform past relevant work as a beauty shop manager); Johnson v. Colvin, No. 13-CV-6319 (CJS), 2014 WL 1394365, at *7 (W.D.N.Y. Apr. 9, 2014) ("Since the VE testified that both the pharmaceutical packaging inspector and camera inspector positions were, in fact, individually listed in the DOT, they are not composite jobs.").  The Commissioner therefore argues that, because both laundry worker and industrial cleaner are listed in the DOT, Delgado's past relevant work should not be considered a composite job.

However, these two cases are not binding on this court and are contrary to the findings of a number of district courts in other circuits.  See West, 2017 WL 4264126, at *6; Morgan v. Berryhill, No. 2:16-CV-01052 (JRC), 2017 WL 2628094, at *2–*3 (W.D. Wash. June 19, 2017); Shealy, 2015 WL 467726, at *12 ("In the event the main duties

_____

[10] The court acknowledges that Delgado's attorney at the hearing did not object to the vocational expert's classification of Delgado's past relevant work or raise the issue of a composite job.  See Tr. at 45.  However, the attorney's failure to do so does not affect the court's analysis here because the case is already being remanded to the ALJ for other reasons.  Therefore, the court instructs the ALJ to address all errors on remand, whether Delgado's attorney objected to them or not.  See Fly, 2015 WL 5124957, at *5; Waltemire, 2014 WL 3809189, at *12; Lowe, 2014 WL 4373637, at *8.

of past relevant work can only be described by considering multiple DOT occupations, a plaintiff may be considered to have performed a composite job."); Lyda, 221 F. Supp. 3d at 1258. They also are difficult to reconcile with the SSA's Rulings and POMS. See SSR 82-61, at *2 (defining composite job as one that "ha[s] significant elements of two or more occupations and, as such, ha[s] no counterpart in the DOT"); POMS DI 25005.020 (defining a job as composite "if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant"). At least one court has also distinguished Johnson, stating, "In Johnson, while the court did hold that plaintiff's past relevant work did not consist of a composite job because both jobs were separately defined in the Dictionary of Occupational titles, the holding of the case turned on the fact that the plaintiff was capable of performing both jobs." Behne v. Colvin, No. 2:13-CV-086, 2014 WL 4802451, at *1 (N.D. Tex. Sept. 26, 2014). Therefore, the court is not persuaded to follow Clark and Johnson.

The court, however, does not go as far as to hold that Delgado's past relevant work was a composite job. Assessing whether past relevant work is a composite job or not is a fact-specific inquiry that depends on the particulars of the case. See SSR 82-61, at *2. While the record does appear to indicate that Delgado's past relevant work at La Quinta involved duties from two different occupations, the court here does not consider the record to contain sufficient information to determine whether Delgado's past work should appropriately be considered a composite job because of the limited information as to his duties. For example, no testimony was elicited concerning the frequency and duration of each type of duty Delgado performed, how central each duty was to his job, or the nature of the cleaning that he performed besides cleaning toilets

and taking out garbage.  See Shealy, 2015 WL 467726, at *13 (comparing Plumb v.

Astrue, No. 8:10–3090 (RBH), 2012 WL 768058, at *6 (D.S.C. March 7, 2012), which

found a composite job where the claimant's "duties as order clerk were always

performed with the duties of material handler or store's laborer," with Miles v. Astrue,

No. 8:07–3164 (RBH), 2009 WL 890651, at *6, 11–13 (D.S.C. March 30, 2009), which

rejected the composite job argument where the "main duty of [the plaintiff's] past work

was as a data entry clerk and the inventory work was infrequent").

Courts have remanded where the ALJ has failed to gather sufficient evidence to

determine if past relevant work is a composite job or to discuss and give reasons for its

determination.  See Long, 2018 WL 618119, at *5 ("While the Commissioner may

ultimately find that Plaintiff's previous relevant work was properly classified as light work

or that it was not a composite job, sufficient evidence must be gathered and sufficient

analysis must be provided to allow review of that decision."); Shealy, 2015 WL 467726,

at *12 ("[T]he Court finds that the ALJ failed to properly explain his reasoning for finding

the job of 'order clerk' to be past relevant work for Plaintiff as opposed to finding it to be

part of a composite job."); Henry v. Colvin, No. CIV.A. 14-1660, 2015 WL 3902731, at *5

(W.D. La. June 24, 2015); Lyda, 221 F. Supp. 3d at 1259.

Here, because the case is already being remanded for other reasons, the court

orders the ALJ on remand to obtain sufficient information about Delgado's past relevant

work at La Quinta, to consider whether such work should be treated as a composite job,

to articulate his reasons for the determination he makes, and to assess the rest of step

four accordingly.  The court further reminds the ALJ that, because Delgado's RFC may

change after full development of the record, as noted above, either way the ALJ is likely

to need to reconsider his step four analysis to determine whether a person with Delgado's RFC can perform his past relevant work.

### 2. Hearing Testimony

Finally, the court addresses several of Delgado's arguments challenging the ALJ's management of the hearing.  In doing so, the court encourages Delgado's counsel in the future to advance only those arguments she determines has merit, rather than raising all possible arguments regardless of merit.  The court notes that, in challenging the fairness of the hearing, Delgado's counsel cites little to no case law to support her arguments.  See Mot. to Reverse Mem. at 6–7.

First, Delgado argues that the ALJ erred by permitting the vocational expert to appear by telephone.  See id. at 6.  This was not error.  While the regulations prior to June 20, 2013, only expressly permit appearances in person or by video teleconference, the regulations were amended, such that the regulations effective on the date of Delgado's hearing permit appearance by telephone.  Compare 20 C.F.R. § 404.936(c) (2013); with 20 C.F.R. § 404.936(c)(2) (2015) ("The administrative law judge will determine whether any person other than you or any other party to the hearing, including a medical expert or a vocational expert, will appear at the hearing in person, by video teleconferencing, or by telephone."); see also Keith v. Colvin, No. CV-13-01892 (PHX) (JAT), 2016 WL 3345485, at *2 (D. Ariz. June 16, 2016).  Furthermore, Delgado was notified that the vocational expert would testify by telephone, and neither he nor his attorney objected.  See Tr. at 151; Joint Facts at 6; 20 C.F.R. § 404.936(c)(2) (2015) (requiring the ALJ to make certain determinations when directing an expert to appear by telephone if notified of an objection); Diesing v. Comm'r of Soc. Sec. Admin., No. 4:15-CV-00148 (JHE), 2016 WL 1029327, at *3–*4 (N.D. Ala. Mar. 15, 2016).

Finally, even if there were error, it would be harmless because Delgado has not argued that he was prejudiced in any way by the vocational expert's testimony by telephone. See Joint Facts at 6; Henry v. Colvin, 561 Fed. App'x 55, 57–58 (2d Cir. 2014) ("The record shows that Henry's counsel stated no objection to the expert's testimony and suffered from no technical difficulties or time constraints that limited the effectiveness of his cross-examination, and on appeal Appellant alleges no specific prejudice."); Diesing, 2016 WL 1029327, at *4.

Second, Delgado challenges the ALJ's use of an employee from his office as an interpreter rather than a contracting interpreter service. See Mot. to Reverse Mem. at 6. Again, this is not error because Delgado has not shown that he was meaningfully disadvantaged in any way by an interpretation issue. See Tankisi, 521 F. App'x at 31–32 ("Although Tankisi asserts that difficulties with the translation prevented her from fully stating her position, she has not identified a specific point that she was unable to present or understand at the hearing."). At Delgado's hearing, the ALJ asked whether Delgado or his attorney had objections to the interpreter or the manner of interpretation, and neither objected. See Tr. at 29–30. Delgado now argues that "[s]ome of the testimony was inaudible, and much of it was unintelligible." Mot. to Reverse Mem. at 6 (citations omitted). However, the only portion of the transcript identified as inaudible concerned the specific date in 2011 on which he began to receive unemployment benefits. See id. at 32. Delgado has not argued that such a date is material at all to his disability determination. The court's review of the rest of the hearing transcript reveals no other points that are inaudible or unintelligible. To the contrary, Delgado's answers to the ALJ's and his attorney's questions are largely responsive and coherent. See Tr.

at 31–43. Therefore, Delgado has not shown that the arrangement with the interpreter denied him a full and fair hearing.

Finally, Delgado argues that he was "largely incidental to the hearing." Mot. to Reverse Mem. at 6. He argues that a "meaningful canvas of the claimant is part of the requirement of developing the record." Id. The only specific point that he argues was not sufficiently canvassed, however, is the contradiction between his testimony that he has back pain and does no yard work and his report on activities of daily living, which states that he has no physical limitations." See id. at 6–7. The court considers it unlikely that the ALJ's failure to canvas Delgado on this one inconsistency would be sufficient to justify remand on its own. However, because the case is already being remanded to the ALJ for other reasons, the court advises the ALJ to obtain additional information from Delgado to clarify this contradiction. See Fly, 2015 WL 5124957, at *5; Waltemire, 2014 WL 3809189, at *12; Lowe, 2014 WL 4373637, at *8.

## VI. CONCLUSION

For the reasons stated above, the Motion to Reverse the Decision of the Commissioner is **GRANTED**. As noted above, although the Motion requests reversal and an order for payment of benefits, the court instead remands the case to the ALJ for proceedings consistent with this Ruling, pursuant to its authority under sections 1383(c) and 405(g) of title 42 of the United States Constitution. See 42 U.S.C. § 405(g) (2017); 42 U.S.C. § 1383(c) (2017). The Motion to Affirm the Decision of the Commissioner is **DENIED**.

The Clerks' Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge who issued this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 13th day of March, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge